UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLENE ALSUP,<br><br>        Plaintiff,<br><br>    v.<br><br>U.S. BANCORP, et al.,<br><br>        Defendants. | No. 2:14-CV-01515-KJM-DAD<br><br>ORDER |

On October 10, 2014, the court heard argument on the defendant's motion to dismiss. Sheri Leonard appeared for the plaintiff, Marlene Alsup; Emilie Woodhead and Joan Fife appeared for the defendant, U.S. Bancorp. After considering the parties' arguments, the court GRANTS the defendant's motion to dismiss with leave to amend.

I. BACKGROUND

On May 23, 2014, plaintiff filed a complaint in Placer County Superior Court. Notice of Removal 2 & Ex. A, ECF No. 1 & 1-1. On June 26, 2014, the defendant removed the action to this court on diversity grounds. *Id.* at 2. The complaint makes the following claims: (1) discrimination on the basis of disability in breach of California Government Code § 12940, *et seq.*; (2) failure to accommodate based on physical disability in violation of California Government Code § 12940 *et seq.*; and (3) failure to engage in an interactive process based on

/////

1  physical disability in violation of California Government Code § 12940, *et seq.*  Compl. 6–8, ECF
2  No. 1-1 (Compl.).
3        Plaintiff makes the following allegations: she worked as a regional manager for the
4  defendant in Roseville, California and rose to the level of vice president.  Compl. ¶ 5.  At all
5  times she "performed her duties in a highly satisfactory manner."  *Id.*  In September 2012,
6  plaintiff was assigned a new boss, Jay Bower.  *Id.* ¶ 6.  From almost the beginning of Mr.
7  Bower's employment, he treated plaintiff "in a negative and devaluing manner."  *Id.*  He also
8  "made comments of an unwelcome sexual nature that Plaintiff found offensive."  *Id.*
9        Plaintiff has a history of mental health problems arising from abuse by her father.
10  *Id.* ¶ 7.  Her history includes a diagnosis of bipolar depression in 2006.  *Id.* ¶ 8.  "Due to feeling
11  belittled and ridiculed," plaintiff began to experience severe depression and acute anxiety.  *Id.*
12  Mr. Bower's actions caused her disability to resurface, and since working with Mr. Bower, she
13  was diagnosed with Bipolar II and PTSD.  *Id.* ¶¶ 7 & 8.  "Basically, working with Mr. Bower
14  opened up memories from [her] past."  *Id.* ¶ 8.  In January 2013, plaintiff began seeing a therapist
15  and a psychologist and was placed on medication.  *Id.* ¶ 9.  Plaintiff's mental health began to
16  affect her not just at work, but in all aspects of her life.  *Id.* ¶ 10.  She began to suffer "disabling
17  panic attacks" during her off hours and also "experienced problems sleeping, being motivated,
18  began losing weight, was unable to concentrate, became hyper-vigilant, experienced a lack of
19  memory, and basically was feeling exhausted all of the time."  *Id.*
20        On December 18, 2013, plaintiff received a "write-up" from Mr. Bower that
21  "caused her mental disability to go out of control."  *Id.* ¶ 11.  As a result, she scheduled an urgent
22  appointment with her psychiatrist.  *Id.*  On December 23, 2013, her doctor placed her on a
23  medical leave of absence.  *Id.*  Her doctor informed the defendant she had a diagnosis of Bipolar
24  II and she should be accommodated under the ADA with "a switch in supervisors."  *Id.*  On
25  February 2, 2014, during her leave of absence, plaintiff sent Ana Wagstaff, an employee in the
26  defendant's human resources department, an email to explain that she could no longer work for
27  Mr. Bower or Mr. Bower's boss, Alan Leimkuehler; that the circumstances with Mr. Bower "had
28  /////

become unbearable"; and that she "was willing and ready to transfer out of the Mortgage side" and had identified two alternative positions. *Id.* ¶ 12.

The next day, February 3, 2014, Ms. Wagstaff sent an email and left a voicemail message for plaintiff to request that they discuss plaintiff's concerns. *Id.* ¶ 13. Ultimately, Ms. Wagstaff told plaintiff to contact her "when she felt up to it" because plaintiff was on a leave of absence. *Id.*

On February 16, 2014, plaintiff sent Ms. Wagstaff an email that stated: "[i]n the past ten days, I've had several panic attacks" and said that communicating with Ms. Wagstaff in person regarding the hostile work environment "isn't conducive to my health . . . ." *Id.* ¶ 14. Plaintiff also stated she "would prefer that our communication continue via email at this point." *Id.* At this time she "was yearning to go back to work in some new capacity," because "working was therapeutic and her mental health . . . had significantly worsened since she had stopped." *Id.* ¶ 15.

On February 20, 2014, Ms. Wagstaff responded to plaintiff's email and said they would need to have a face-to-face conversation. *Id.* ¶ 16. Ms. Wagstaff wrote, "[a]s I understand it, your request for accommodation is directly related to your complaint that your managers have created a work environment you find 'hostile.'" *Id.* Ms. Wagstaff wrote that she stood "ready to assist" plaintiff as soon as she was medically capable of discussing her concerns in a live communication. *Id.*

Plaintiff responded to Ms. Wagstaff via email on March 4, 2014, stating she was not making a "retaliation harassment" complaint, but was asking for a medical accommodation "based on management style which had triggered a long term medical condition." *Id.* ¶ 17. Ms. Wagstaff replied via email on the same day, stating she was writing in response "to [plaintiff's] request for accommodation for the medical condition you claim has been triggered by a management style." *Id.* ¶ 18. She also stated, "[t]he accommodation you are demanding is to be placed in a new job of your choosing," and that first she would like to know more about plaintiff's claim of a hostile work environment. *Id.*

1    On the same day, plaintiff sent a responsive email that included a detailed outline of Mr. Bower's and Mr. Leimkuehler's inappropriate actions. *Id.* ¶ 19. Plaintiff "confirmed that she was not demanding to be placed in a new job of her choosing, but would be flexible." *Id.* She also stated, "[b]ecause of severe and serious issues in my past (which [Mr. Bower] also knows about), working in that environment has re-activated PTSD in addition to depression, anxiety, and panic attacks." *Id.*

Plaintiff and Ms. Wagstaff eventually spoke by telephone. *Id.* ¶ 20. In that conversation Ms. Wagstaff said if plaintiff could not work for Mr. Bower and Mr. Leimkuehler she needed to continue her disability leave. *Id.* Ms. Wagstaff also stated that if plaintiff's disability was not extended, she would be terminated for vacating her job. *Id.* Ms. Wagstaff asked plaintiff to request specific restrictions that would allow her to keep working with Mr. Bower and Mr. Leimkuehler, "and would not discuss a transfer at all." *Id.* When plaintiff asked for clarification as to what Ms. Wagstaff would consider an appropriate restriction, Ms. Wagstaff said she would not give an example. *Id.* Plaintiff could visualize no restrictions other than a transfer away from Mr. Bower. *Id.* ¶ 21. "Mr. Bower's voice, mannerisms, physical stature, age, looks, domineering personality, and behavior exasperate[ed] and trigger[ed] Plaintiff's disability." *Id.*

On March 27, 2014, plaintiff's doctor wrote to Ms. Wagstaff that plaintiff "cannot be in the same proximity nor have any communication whatsoever with Mr. Jay Bower." *Id.* ¶ 22. Until plaintiff was placed under a different manager, she would "continue[] to have numerous physical and emotional problems," including "PTSD, severe depression and an acute anxiety with panic attacks." *Id.* The work environment with Mr. Bower was "unhealthy[,] detrimental and not conductive [sic] to her continued recovery." *Id.*

On April 7, 2014, defendant informed plaintiff that her transfer request was denied. *Id.* ¶ 23. Defendant "continues to deny a transfer and/or analyze whether or not any reasonable accommodation exists through the interactive process." *Id.* At the hearing, the parties confirmed plaintiff no longer works for defendant.

/////

## II. STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed for failure to state a claim upon which relief can be granted. A court may dismiss "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In making this determination, the court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus,* 551 U.S. 89, 93-94 (2007) (per curiam). This rule does not apply to "a legal conclusion couched as a factual allegation," *Papason v. Allain,* 478 U.S. 265, 286 (1986) (citations omitted), nor to "allegations that contradict matters properly subject to judicial notice," or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988-89 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187.

## III. ANALYSIS

### A. Discrimination on the Basis of Disability

In order to make out a prima facie case of disability discrimination, a plaintiff must show she "(1) suffered from a disability, or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations, and (3) was subjected to an adverse employment action because of the disability or perceived disability." *Wills v. Superior Court*, 195 Cal. App. 4th 143, 159-60 (2011) (citations omitted).

Under the California Fair Employment and Housing Act (FEHA), a mental disability is "any mental or psychological disorder or condition, such as an intellectual disability, organic brain syndrome, emotional or mental illness, or specific learning disabilities, that limits a major life activity." Cal. Gov't Code § 12926(j)(1). "A mental or psychological disorder or condition limits a major life activity if it makes the achievement of the major life activity difficult." Cal. Gov't Code § 12926(j)(1)(B). Here, the plaintiff alleges a diagnosis of bipolar disorder. The FEHA specifically defines bipolar disorder as a mental disability within its protections. *Id.* § 12926.1(c).

/////

1      Defendant contends that because plaintiff's mental illness arose from her inability
2 to get along with her supervisor and its only effect on her job was to render her unable to work
3 with that supervisor, it does not give rise to a disability within the meaning of the FEHA, citing
4 this court's decision in *Gliha v. Butte–Glenn Community College District,* No. 12-02781, 2013
5 WL 3013660, at *5 (E.D. Cal. June 14, 2013).  In *Gliha*, this court stated that "an inability to get
6 along with one's supervisor does not give rise to a disability within the meaning of either the
7 FEHA or the ADA." *Id.*  The plaintiff in *Gliha* claimed discrimination and failure to
8 accommodate on the basis of a perceived disability, passive aggressive disorder, with which he
9 had never been diagnosed. *Id.* at *3-4.  In dismissing that plaintiff's claims this court ruled that
10 passive aggressive disorder was not contemplated as a disability by the FEHA. *Id.* at *5.
11     Defendant also cites *Hobson v. Raychem Corp.*, a case decided under the FEHA,
12 as well as numerous other cases interpreting the ADA, for the proposition that an inability to get
13 along with one's supervisor does not give rise to a disability.  See Am. Mot. Dismiss 3, ECF No.
14 6 (citing *Hobson v. Raychem Corp.*, 73 Cal. App. 4th 614, 628 (1999), *overruled on other*
15 *grounds by Colmenares v. Braemer Country Club, Inc.,* 29 Cal. 4th 1019, 1031 (2003)).  The
16 *Hobson* court stated that "federal courts interpreting the ADA and all California courts
17 interpreting the FEHA have uniformly declined to extend protection to persons whose alleged
18 disabilities rendered them unable to perform a particular job even though they might have been
19 physically able to work in a different position."  73 Cal. App. 4th at 628; *See also Benson v. Cal.*
20 *Corr. Peace Officers Ass'n,* No. 08-0886, 2010 WL 682285, at *6 (E.D. Cal. Feb. 24, 2010)
21 (holding the plaintiff did not show her work-related stress substantially limited her major life
22 activity of working when she claimed "that the only obstacle to the performance of her job was
23 the stress of reporting to [her supervisor]."); *Wellington v. Lyon Cnty. Sch. Dist.,* 187 F.3d 1150,
24 1154 (9th Cir. 1999) ("The inability to perform a single, particular job does not constitute a
25 substantial limitation in the major life activity of working." (citation and internal quotation marks
26 omitted)); *Baker v. Cnty. of Merced*, No.10-2377, 2011 WL 2708936, at *5 (E.D. Cal. July 12,
27 2011) ("[T]he only indication is that [plaintiff's] stress and high blood pressure prevented her
28 /////

1  from performing a single, particular job with [defendant]. This is insufficient to allege a
2  substantial limitation of a major life activity.").

3  Plaintiff claims the facts of her case are more similar to *Kraus v. Shinseki,*
4  846 F. Supp. 2d 936, 949 (N.D. Ill. 2012), a case brought based on a similar statute, 29 U.S.C.
5  § 791 *et seq.* In *Kraus*, the court found there was a triable issue of fact as to whether plaintiff was
6  substantially limited in a major life activity for purposes of establishing a claim of failure to
7  reasonably accommodate, but not disability discrimination. *Id.* at 948-49. *Kraus* does not apply,
8  even persuasively, to plaintiff's disability discrimination claim.

9  Plaintiff also attempts to distinguish many of the cases holding an employee is not
10 disabled if she cannot get along with her supervisor, because they relied on "working" as a major
11 life activity and were decided under the ADA, not the FEHA. Opp'n 9, ECF No. 9. Courts "have
12 looked to decisions and regulations interpreting the ADA to guide construction and application of
13 the FEHA," if the FEHA provision in question is similar to the one in the ADA. *Hastings v. Dep't*
14 *of Corr.,* 110 Cal. App. 4th 963, 973 n.12 (2003) (citations omitted). Here, the ADA requires a
15 disability to "substantially" limit a major life activity, whereas the FEHA requires only that a
16 major life activity be limited. *See Colmenares,* 29 Cal. 4th at 1031. The plaintiff claims she has
17 alleged limitations of major life activities, including working, sleeping and thinking. Opp'n 7-8,
18 ECF No. 9 (citing *Head v. Glacier Northwest, Inc.,* 413 F.3d 1053, 1061 (9th Cir. 2005) (both
19 sleeping and thinking major life activities under the ADA), *abrogated on other grounds by Univ.*
20 *Tex. Sw. Med. Cntr. v. Nassar*, 133 S. Ct. 2517 (2013)).

21 Plaintiff's arguments are misplaced. The California Supreme Court has ruled that
22 "the FEHA requires employees to prove that they are qualified individuals under the statute just
23 as the federal ADA requires." *Green v. State,* 42 Cal. 4th 254, 258 (2007). It is true relevant
24 ADA cases focus on the requirement that the disability substantially limit the major life activity
25 of working. But in order to make out a prima facie case for disability discrimination under the
26 FEHA, plaintiff must allege she could perform the essential duties of the job with or without
27 reasonable accommodations. *See Wills,* 195 Cal. App. 4th at 159-60. Because the plaintiff's
28 claimed disability stems from her inability to get along with her supervisor, and the only effect it

had on her job was to render her unable to work with that supervisor, she has not and cannot allege she could perform the duties of her job with or without reasonable accommodations.

Plaintiff cites *Bagatti v. Department of Rehabilitation,* 97 Cal. App. 4th 344, 359-61 (2002), to support her assertion that she is not required to prove she is a qualified individual. Opp'n 9-10, ECF No. 9. Like *Kraus, Bagatti* does not apply here. *Bagatti* addressed not a claim for discrimination, but one for failure to reasonably accommodate under § 12940(m). *See Green,* 42 Cal. 4th at 265. Another state appellate court has disapproved of *Baghatti's* analysis in *Nadaf-Rahrov v. Neiman Marcus Group, Inc.,* 166 Cal. App. 4th 952, 975 (2008) ("Under *Baghatti's* approach, however, an employer could be held liable for failing to accommodate an employee even if it engaged in a good faith interactive process and determined no accommodation was possible . . . . We disagree, therefore, with *Bagatti's* analysis.") (citations omitted).

Because the plaintiff's alleged disability only precludes her from working for a particular supervisor, she does not state a claim for disability discrimination.

B. Failure to Accommodate

The FEHA makes it unlawful for an employer "to fail to make reasonable accommodation for the known physical or mental disability of an . . . employee." Cal. Gov't Code § 12940(m). The elements of a failure to accommodate claim are "(1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability." *Scotch v. Art Inst. of Cal.-Orange Cty., Inc.,* 173 Cal. App. 4th 986, 1009–10 (2009). The employer's obligation to provide disabled employees with a reasonable accommodation does not require it to provide "the best accommodation or the accommodation the employee seeks." *Hanson v. Lucky Stores,* 74 Cal. App. 4th 215, 228 (1999).

Defendant asserts that plaintiff does not state a claim for failure to accommodate because the accommodation plaintiff requests, a transfer to a supervisor other than her own, is per se unreasonable. Mot. 5, ECF No. 6. Plaintiff argues she asked for two different accommodations: a change in supervisor or a transfer to an open, available job position. Opp'n

8

11, ECF No. 9. She also contends that defendant refused to allow her to apply for these positions. *Id.* at 12. She does not allege defendant prevented her from applying for any other jobs internally. In any event, the two accommodations plaintiff identifies are functionally identical: a transfer to a different position under a new supervisor.

Plaintiff also argues defendant should have offered other accommodations, such as "telecommuting, a longer leave of absence to allow [p]laintiff to obtain necessary treatment, [and] changes to supervisory method." Opp'n 12, ECF No. 9. These allegations do not appear in her complaint, and she does not allege she raised these accommodations during her discussions with Ms. Wagstaff. *Id.* Rather, plaintiff relies on *Scotch,* 173 Cal. App. 4th at 1018, to support her argument that she must be allowed to present these potential accommodations now. In *Scotch,* the court determined that the plaintiff should be permitted to identify a specific, reasonable accommodation that he would have discovered during the interactive process had the employer engaged in the interactive process. *Id.* at 1018–19. Here, plaintiff has not alleged the reasonable accommodations she now suggests were unavailable to her at the time of the interactive process. In addition, as discussed below, defendant fulfilled its duty to engage in the interactive process. Plaintiff is not now permitted to raise these new potential accommodations for the first time.

In support of its argument that plaintiff's requested accommodations were unreasonable as a matter of law, defendant cites *Gazzano v. Stanford Univ.,* No. 12-05742, 2014 WL 794803, at *4 n.59 (N.D. Cal. Feb. 27, 2014). In *Gazzano,* although the plaintiff did not raise a reasonable accommodation claim, the court noted, "even if the claim had been properly raised, the accommodation requested is *per se* unreasonable, and [the defendant] would not have been required to provide it." *Id.* The *Gazzano* court cited the *EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act,* Question 33, which reads, "[a]n employer does not have to provide an employee with a new supervisor as a reasonable accommodation." 1999 WL 33305876, at *24 (Oct. 17, 2002). Defendant also relies on *Weiler v. Household Fin. Corp.,* 101 F.3d 519, 526-27 (7th Cir. 1996), in which the Seventh Circuit held that the ADA's reasonable accommodation requirement does not

/////

1  require an employer to transfer a disabled employee to a different supervisor because the
2  supervisor causes the employee stress and stress-related disorders.

3  Plaintiff argues that the relevant language in *Gazzano* is dicta and attempts to
4  distinguish *Weiler* on the grounds that the employer in that case offered the plaintiff other
5  positions, which the plaintiff refused. *Weiler,* 101 F.3d at 526. She also cites *Kennedy v. Dresser*
6  *Rand Co.,* 193 F.3d 120, 122-23 (2d Cir. 1999), in which the court held that in the Second
7  Circuit, "the question of whether a requested accommodation is a reasonable one must be
8  evaluated on a case-by-case basis. A per se rule stating that the replacement of a supervisor can
9  never be a reasonable accommodation is therefore inconsistent with our ADA case law." *Id.* at
10 122-23. But the *Kennedy* court also determined there is a presumption "that a request to change
11 supervisors is unreasonable, and the burden of overcoming that presumption (i.e., of
12 demonstrating that, within the particular context of the plaintiff's workplace, the request was
13 reasonable) therefore lies with the plaintiff." *Id.* Even under the analysis set forth in *Kennedy*,
14 plaintiff's allegations in this case do not state a claim because she has not alleged facts that would
15 overcome the presumption her requested accommodation was unreasonable.

16 Plaintiff also cites *Diaz v. Federal Express Corp.*, 373 F. Supp. 2d 1034 (C.D. Cal.
17 2005), to argue it is an issue of fact whether a transfer to another supervisor is a reasonable
18 accommodation. *Diaz* resolved a motion for summary judgment. Moreover, in *Diaz*, the court
19 did not consider whether a transfer to a different supervisor was a reasonable accommodation.
20 Rather, the employer had claimed the plaintiff was not qualified to perform the essential duties of
21 his job because of problems with his attendance. *Id.* at 1060. The plaintiff contended his absences
22 resulted from depression brought on by a hostile work environment involving his manager and
23 second-level supervisor. *Id.* at 1061. The *Diaz* court held that this created a triable issue of fact
24 as to whether the plaintiff was a qualified individual under the FEHA. *Id.* It also determined that
25 the defendant's knowledge of the plaintiff's disability—and the defendant's obligation to engage
26 in the interactive process to identify whether a reasonable accommodation would have been
27 possible—was a triable issue of fact. *Id.* at 1058-59, 1062.
28 /////

Here, unlike in *Diaz*, the court considers defendant's motion to dismiss. The court assumes plaintiff's allegations are true. Under these allegations, plaintiff is not a qualified individual and defendant knew about plaintiff's alleged disability. As discussed more fully below, assuming the plaintiff's allegations are true, the defendant fulfilled its duty to engage in an interactive process to determine if a reasonable accommodation existed.

Plaintiff does not present any relevant California case. Neither has the court located any California case other than *Gazzano*. Outside California, however, the overwhelming majority of courts have held a plaintiff may not couch a request for transfer as an accommodation for her disability, and many specifically hold that a transfer is an unreasonable accommodation as a matter of law. *See, e.g., Gaul v. Lucent Technologies, Inc.,* 134 F.3d 576, 581 (3d Cir. 1998) (employee's proposed accommodation, transfer away from coworkers' stress, unreasonable as matter of law); *Prichard v. Dominguez,* No. 05-0040, 2006 WL 1836017, at *13-14 (N.D. Fla. June 29, 2006) (requested transfer accommodation under a different supervisor unreasonable as matter of law); *Ozlek v. Potter,* No. 05-0257, 2006 WL 964484, at *5 (E.D. Pa. Apr. 13, 2006) (plaintiff's only requested accommodation, transfer to position outside supervision of his management team, not reasonable); *Kolpas v. G.D. Searle & Co.*, 959 F. Supp. 525, 530 (N.D. Ill. 1997) ("It is not a reasonable accommodation for an employer to . . . transfer an employee to a position under another supervisor."); *Lewis v. Zilog, Inc.,* 908 F. Supp. 931, 948 (N.D. Ga. 1995) ("[p]laintiff's request to accommodate . . . disability [by transfer] is unreasonable and not a reasonable accommodation under the ADA as a matter of law"); *Adams v. Alderson,* 723 F. Supp. 1531, 1531-32 (D.D.C. 1989), *aff'd sub nom. Adams v. G.S.A.,* No. 89-5265, 1990 WL 45737 (D.C. Cir. Apr. 10, 1990) (requested accommodation, transfer of plaintiff or supervisor or both, "is clearly not one reasonably expected of [the employer]"). *But see, e.g.*, *Kennedy*, 193 F.3d at 122-23 (declining to adopt this rule as a matter of law, but finding a rebuttable presumption that transfer is an unreasonable accommodation).

As noted, cases interpreting the ADA are persuasive authority for interpreting the FEHA. *See Hastings,* 110 Cal. App. 4th at 973 n.12. Based on the considerable persuasive

11

authority cited above, the plaintiff's requested accommodation, transfer to a new position under a new supervisor, is unreasonable as a matter of law.

Even without the benefit of the out-of-state cases described above, plaintiff has not stated a claim. Plaintiff's work environment could not have been modified or adjusted in a manner that would have enabled the plaintiff to perform the functions of her job. In *Nadaf-Rahrov*, the court held "an employer is liable under section 12940(m) for failing to accommodate an employee *only if* the work environment could have been modified or adjusted in a manner that would have enabled the employee to perform the essential functions of the job." 166 Cal. App. 4th at 975 (emphasis added). Because the plaintiff here alleges the only possible accommodation would have been her transfer to a different supervisor, and has made no allegations that her workplace could have been modified or adjusted such that she could perform the essential functions of her job, she does not state a claim for failure to accommodate.

C. Failure to Engage in the Interactive Process

Under the FEHA, it is unlawful for an employer "to fail to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability or known medical condition." Cal. Gov't Code § 12940(n). "[T]he interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees with the goal of identify[ing] an accommodation that allows the employee to perform the job effectively." *Nadaf–Rahrov,* 166 Cal. App. 4th at 984 (citations omitted).

Defendant contends it engaged in the interactive process because (1) plaintiff refused to engage with the defendant to determine a reasonable accommodation and insisted on an accommodation that was per se unreasonable; and (2) plaintiff's allegations and the underlying communications the plaintiff incorporates by reference demonstrate that the defendant engaged in the interactive process. Mot. 6, ECF No. 6.

In support of its position, defendant has submitted four emails and one letter referenced in plaintiff's complaint, which it asks the court to consider under the doctrine of

incorporation by reference. Mot. 7, ECF No. 6. Wagstaff Decl. ¶¶ 3-7 & Exs. A-E, ECF No. 6-1 to 6-6. Under this doctrine, the court may take into account "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1160 (9th Cir. 2012) (quoting *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2003)). *See also Gliha,* 2013 WL 3013660, at *3 (when considering motion to dismiss, court may consider, based on incorporation by reference doctrine, documents whose contents are alleged in complaint, including performance evaluations and documents regarding plaintiff's dismissal). "A court 'may treat such a document as part of the complaint, and thus may assume its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Davis*, 691 F.3d at 1160 (quoting *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003)).

Plaintiff does not challenge the authenticity of the documents defendant seeks to incorporate by reference. Instead, she argues the doctrine of incorporation by reference is meant only to "prevent a plaintiff with a legally deficient claim from surviving a motion to dismiss simply by failing to attach a dispositive document on which it relied.'" Opp'n 15, ECF No. 9 (internal quotation marks and alterations omitted) (citing *Pension Benefit Guar. Corp. v. White Consolidated Industries, Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993)). Courts in this circuit have not limited the application of the incorporation by reference doctrine to the situation plaintiff suggests. *See Knievel,* 393 F.3d at 1076-77 (incorporating by reference web pages surrounding a photograph at issue in defamation action); *Aviation Co. LLC v. Bank of Am., Corp.,* No. 13-00162, 2013 WL 5707329, at *4 n.2 (D. Haw. Oct. 18, 2013) (incorporating by reference back of check when front of check was attached to complaint). Ninth Circuit law permits consideration of the materials defendant submits.

The complaint includes allegations that show Ms. Wagstaff, from defendant's human resources department, repeatedly attempted to engage the plaintiff in an interactive process. Compl. ¶¶ 13, 16, 18, 20, 23, ECF No. 1-1. Plaintiff alleges Ms. Wagstaff asked to have a live conversation with her, while plaintiff attempted to communicate only through email. *Id.*
/////

¶¶ 13, 14, 16, 20. The plaintiff alleges Ms. Wagstaff asked plaintiff to request specific restrictions that would allow her to keep working with her supervisors. *Id.* ¶ 20.

A review of the documents incorporated by reference confirms the conclusion that defendant attempted to explore options for accommodation of plaintiff. In her email dated March 4, referenced in the complaint at paragraph 18, Ms. Wagstaff attempted to engage plaintiff in a conversation about her disability and requests for accommodation:

> The interactive process involves a two-way communication between an employer and an employee like you regarding potential job assistance to help you to perform your job. While you have stated that the specific accommodation you want is to be placed into a new job under new management, the interactive process requires more information from you. This does not mean that we need or want your detailed medical history or condition; we do need information about what makes [your supervisor's] behavior and interactions problematic for you so we can talk about possible accommodations—a different job or something else—that will allow you to return to work.

Wagstaff Decl. Ex. C at 2, ECF No. 6-4. In her letter dated March 27, referenced in the complaint in paragraph 22, Ms. Wagstaff proposed three possible courses:

> [I]f you wish to remain employed with U.S. Bank, you have the following options: (1) continue your disability leave, consistent with U.S. Bank's policies and procedures[;] (2) return to work in your current position, with or without a reasonable accommodation, upon your physician's releasing you to return to work; or (3) apply for vacant positions with U.S. Bank. As you know, our action plan would ordinarily prevent you from being considered for other positions, but we have waived that condition in order to permit you to apply for other positions.

*Id.* Ex. E at 2, ECF No. 6-6.

Plaintiff contends that her reluctance to participate in live conversations was a result of her mental health condition. Opp'n 14-15, ECF No. 9 (citing *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1285 (7th Cir. 1996)). In *Bultemeyer,* the court stated that "[i]n a case involving an employee with mental illness, the communication process becomes more difficult. It is crucial that the employer be aware of the difficulties, and help the other party determine what specific accommodations are necessary." *Id.* at 1285 (citations omitted). The allegations here, however, show defendant met this requirement by suggesting possible courses forward.

/////

1   Plaintiff also appears to suggest that defendant should have engaged in the
2   interactive process with someone other than her. Opp'n 14-15, ECF No. 9 (citing *Claudio v.*
3   *Regents of the Univ. of Cal.,* 134 Cal. App. 4th 224, 247 (2005) and *Hanson v. Lucky Stores, Inc.*
4   74 Cal. App. 4th 215 (1999)). However, the cases plaintiff cites do not require the employer to
5   engage with someone other than the employee, but rather allow the practice in certain limited
6   circumstances. *See Claudio*, 134 Cal. App. 4th at 247 ("[O]rdinarily the employee cannot force
7   the employer to go through the employee's attorney for the interactive process, [but] here there
8   were unusual circumstances."); *Hanson*, 74 Cal. App. 4th at 229 (determining employer
9   sufficiently engaged in interactive process where employer discussed accommodations with
10  employee's doctor and specialists). Unlike the plaintiff in *Claudio*, plaintiff here did not identify
11  or request that defendant engage with an attorney.
12  Construing the allegations of the complaint and the documents incorporated by
13  reference in the light most favorable to plaintiff, it may be an issue of fact whether the plaintiff
14  refused to engage with defendant to determine a reasonable accommodation; however, defendant
15  fulfilled its duty to engage in a timely, good faith interactive process with plaintiff for the
16  purposes of determining effective reasonable accommodations. Plaintiff's claim for failure to
17  engage in the interactive process is dismissed.
18  IV. <u>LEAVE TO AMEND</u>
19  Federal Rule of Civil Procedure 15(a)(2) provides "[t]he court should freely give
20  leave [to amend a pleading] when justice so requires," and the Ninth Circuit has "stressed Rule
21  15's policy of favoring amendments." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149,
22  1160 (9th Cir. 1989). "In exercising its discretion [regarding granting or denying leave to amend]
23  'a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits
24  rather than on the pleadings or technicalities.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183,
25  186 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)).
26  However, "the liberality in granting leave to amend is subject to several limitations. Leave need
27  not be granted where the amendment of the complaint would cause the opposing party undue
28  prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Ascon*

*Properties*, 866 F.2d at 1160 (internal citations omitted).  In addition, a court should look to whether the plaintiff has previously amended the complaint, as "the district court's discretion is especially broad 'where the court has already given a plaintiff one or more opportunities to amend [its] complaint.'" *Id.* at 1161 (quoting *Leighton*, 833 F.2d at 186 n.3).

Here the court grants plaintiff leave to amend, if she is able to do so consonant with Federal Rule of Civil Procedure 11.  To state a claim for discrimination on the basis of a disability under the FEHA, the plaintiff must allege she "was subjected to an adverse employment action because of the disability or perceived disability."  *Wills*, 195 Cal. App. 4th at 159-60.  The complaint did not allege an adverse employment action, but, as the parties confirmed at hearing, defendant terminated plaintiff after the complaint was filed.  In addition, plaintiff informed the court of her intention, should she be granted leave to amend, to allege facts to show defendant's decision to terminate her was motivated by her alleged disability.  For these reasons, and because the court perceives no prejudice or bad faith, plaintiff is granted leave to amend her complaint.

V. CONCLUSION

In each of the three causes of action alleged, plaintiff has not stated a claim upon which relief can be granted.  The defendant's motion to dismiss is GRANTED with leave to amend.  The plaintiff shall file an amended complaint, if at all, no later than twenty-one days from the date of this order.

IT IS SO ORDERED.

DATED:  January 13, 2015.

UNITED STATES DISTRICT JUDGE