UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLENE ALSUP,<br><br>           Plaintiff,<br><br>      v.<br><br>U.S. BANCORP and DOES 1 through 5, inclusive,<br><br>           Defendants. | No. 2:14-cv-01515-KJM-DAD<br><br><br><br>ORDER |

   Plaintiff Marlene Alsup charges her former employer, defendant U.S. Bancorp (the Bank), with violations of the California Fair Employment and Housing Act (FEHA). She alleges it discriminated against her because of her mental disability. Her original complaint was dismissed with leave to amend, and she has filed an amended complaint. The bank has again moved to dismiss. After considering the parties' briefing, the court determined not to hold a hearing, and now grants the motion in part as described below.

I.  BACKGROUND

   Ms. Alsup's first amended complaint includes largely the same allegations as her original complaint, summarized in the court's previous order. *See* Order Jan. 15, 2015, at 1–5, ECF No. 21. For the sake of clarity and completeness, however, several of these allegations bear repeating here. Ms. Alsup suffers from clinical depression, bipolar disorder II, post-traumatic

1

stress disorder, and anxiety, all arising from childhood physical and sexual abuse.  First Am. Compl. ¶ 5, ECF No. 23.  These conditions cause energy loss, impaired concentration, problems sleeping, suicidal ideation, hypomania, anxiety, uncontrollable thoughts, irritability, outbursts of anger, difficulty concentrating, and panic attacks, among other symptoms.  *Id.* ¶¶ 6–9.  Before the alleged events leading her to file a complaint here, she was able to manage these symptoms and build a successful career in the mortgage industry.  *Id.* ¶¶ 10–11.

She began working at the Bank as a regional manager in 2003.  *Id.* ¶ 12.  In 2006 several disabling effects of her mental health conditions resurfaced, causing panic attacks, trouble driving as a result of her anxiety, insomnia, and weight loss.  *Id.* ¶ 13.  After restarting treatment, she calmed her symptoms and returned to work.  *Id.*  The amended complaint does not specify whether she requested or received any accommodations from the Bank at that time.

In September 2012, Ms. Alsup was assigned to a new boss, Jay Bower.  *Id.* ¶ 14.  Ms. Alsup knew Mr. Bower before he became her supervisor, and had spoken freely with him about her mental health conditions, for example, at annual management meetings.  *Id.*  When she started working more directly under his supervision, however, his "physical appearance," "demeanor," and treatment of Ms. Alsup caused her to experience "flashbacks"—she felt "as though a traumatic event was happening again."  *Id.* ¶ 14.  She also experienced panic attacks, depression, anxiety, sleeplessness, loss of motivation, weight loss, concentration problems, hypervigilance, memory loss, and exhaustion.  *Id.* ¶ 16.  She told Mr. Bower about her symptoms, but he was hostile and dismissive, and told her "she should not talk if she ha[d] nothing intelligent to say."  *Id.*

In January 2013 she saw a therapist and psychologist and began a course of treatment, including medication.  *Id.* ¶¶ 17–18.  She continued work for eleven more months until her psychiatrist placed her on medical leave in late December 2013.  *Id.* ¶ 18.  Her doctor informed the Bank she suffered from "Bipolar II" and recommended the Bank accommodate her by changing her supervisor.  *Id.*

On February 2, 2014, while she was on a leave of absence, Ms. Alsup sent an email to a member of the Bank's human resources department, Ana Wagstaff.  *Id.* ¶ 19; Wagstaff

Decl., Ex. A, ECF No. 6-2.[1]  She informed Ms. Wagstaff that a "hostile environment" at work had "unlocked memories" of her childhood "in a severely dysfunctional home" and had affected her "emotionally and physically."  FAC ¶ 19; Wagstaff Decl., Ex. A, at 1.  The circumstances "with [Mr. Bower] had become unbearable," "impossible to manage," and had forced her to seek medical attention "due to severe depression, acute anxiety and PTSD."  FAC ¶ 19; Wagstaff Decl., Ex. A, at 1.  She wrote, "I cannot work for "Jay [Bower] and Alan [Leimkuehler]."[2]  Wagstaff Decl., Ex. A, at 1.  She clarified that only Mr. Bower's supervision could have caused the symptoms of her mental health conditions to resurface and that her doctor recommended her direct supervisor be changed.  *Id.* Ex. A, at 1–2.  To remedy the situation, Ms. Alsup suggested a transfer "out of the Mortgage side" of the Bank and suggested two positions.  FAC ¶ 19.

Ms. Alsup and her physician corresponded with Ms. Wagstaff by writing and phone for several weeks, *see id.* ¶¶ 22–30, until Ms. Wagstaff gave Ms. Alsup three choices: continue on disability leave; return to work upon release by her physician; or apply for vacant positions within the Bank, *id.* ¶ 31.  Ms. Alsup's doctor did not release her to return to work, regardless of her position at the Bank, so she chose to remain on disability leave.  *Id.*  Because she could not work, her mental health worsened, including her ability to concentrate, her memory, and her anxiety.  *Id.*  She felt the bank had "devalued" her despite her years of service.  *Id.*  She reiterated to Ms. Wagstaff that "her return to work under Mr. Bower was not an option whatsoever" because she had experienced suicidal thoughts, and she and her doctors feared for

---

[1] Exhibits A–E were incorporated by reference into Ms. Alsup's original complaint; the complaint referred to each and she not only referenced them but also did not challenge their authenticity.  *See* Order Jan. 15, 2015, at 12–13, ECF No. 21 ("[T]he court may take into account 'documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" (quoting *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012))).  Again, here, Ms. Alsup does not challenge the authenticity of these documents and refers to them in her amended complaint.  *See* FAC ¶¶ 18–19, 22–26, 30, 34.

[2] In Ms. Alsup's opposition to the Bank's motion to dismiss her original complaint, she specified "Alan" was Alan Leimkuehler, Mr. Bower's "boss and supporter."  Pls.' Opp'n Mot. Dismiss 3:5–6, ECF No. 9.

her life. *Id.* ¶ 32. Ms. Wagstaff "appeared dismissive" of Ms. Alsup's mental health and even said "we cannot help what you do in the future." *Id.*

On April 7, 2014, Ms. Wagstaff emailed Ms. Alsup to tell her she would not be allowed to transfer. *Id.* ¶ 34. Ms. Wagstaff also "highly suggested" Ms. Alsup continue her leave of absence and not seek alternative employment at the Bank until her doctor released her to return to work. *Id.* ¶ 35.

Ms. Alsup filed a complaint against the Bank in Placer County Superior Court on May 23, 2014. Notice of Removal 2 & Ex. A, ECF No. 1 & 1-1. The complaint alleged the Bank had violated the FEHA, California Government Code § 12940 *et seq.*, by discriminating against her on the basis of her disability, by failing to accommodate her disability, and by failing to engage in an interactive process. *Id.* at 6–8, ECF No. 1-1. On June 26, 2014, the Bank removed the action to this court on diversity grounds, *id.* at 2, ECF No. 1, and on July 3, 2014, moved to dismiss the entire action for failure to state a claim on which relief could be granted, Mot. Dismiss, ECF No. 6.

On July 16, 2014, before Ms. Alsup opposed the motion to dismiss, the Bank terminated her by letter. *See* FAC ¶ 36; Wagstaff Decl. Ex. A, at 2, ECF No. 25-2.[3] The letter noted she had "been absent from work since December 23, 2013"; her "approved disability leave expired on March 23, 2014"; the Hartford had denied her request for an extension; her requested accommodation was unreasonable; and "despite [the Bank's] repeated efforts to provide you a reasonable accommodation that would enable you to perform the essential functions of your Mortgage Underwriting Manager position, you have refused to engage in the interactive process and have advised [the Bank] that you will not return to your position." FAC ¶ 36; Wagstaff Decl. Ex. A, at 2, ECF No. 25-2. After her termination, her mental health declined. FAC ¶ 38. She was hospitalized in July 2014. *Id.* She remains unemployed. *Id.*

---

[3] Exhibit A to the pending motion is a copy of this letter. The amended complaint refers to the letter and Ms. Alsup does not dispute its authenticity.

After reviewing the briefing and holding a hearing, the court granted the previous motion dismiss. Order Jan. 15, 2015, ECF No. 21. First, the court held Ms. Alsup had not stated a claim for disability discrimination because (1) inability to work for a particular supervisor was not a disability under the FEHA; (2) Ms. Alsup was not a "qualified employee" because she did not allege she could perform the duties of her job with or without reasonable accommodations; and (3) she had not alleged the Bank had taken an adverse employment action. *Id.* at 5–8. The court also held she had not stated a claim for failure to accommodate her mental disability because (1) "transfer to a new position under a new supervisor [was] an unreasonable accommodation as a matter of law" and (2) she did not allege her work environment could be modified or adjusted to enable her to perform the essential functions of her job. *Id.* at 11–12. Finally, the court held that as alleged, the Bank had engaged in a timely, good faith interactive process to determine whether any reasonable accommodations would allow Ms. Alsup to return to work. *Id.* at 12–15. The court granted Ms. Alsup leave to amend her complaint to allege an adverse employment action and facts showing the Bank's decision to terminate her was motivated by her alleged disability. *Id.* at 16.

Ms. Alsup filed her amended complaint, alleging the same three claims and appending several factual allegations. The Bank filed the current motion to dismiss. Mot. Dismiss, ECF No. 25. It argues as follows: (1) Ms. Alsup again omitted any allegations showing her termination was motivated by her alleged disability, *id.* at 2–3; (2) she has not alleged she was a qualified individual because her alleged disability stems only from her inability to get along with her supervisor, *id.* at 3–4; (3) she has not alleged she can perform the duties of her job with or without a reasonable accommodation, *id.* at 4–6; (4) she has not stated a claim for failure to accommodate because her only requested relief is unreasonable as a matter of law, *id.* at 6–7; (5) the Bank fulfilled its obligation to engage in a timely, good faith interactive process, *id.* at 7–8; and (6) as a matter of public policy, allowing her claims to go forward "would also give preferential treatment to individuals claiming a disability because they—unlike other employees—would get to decide whenever they wanted to transfer from an undesirable or stressful boss," *id.* at 8. Ms. Alsup generally opposes the motion on each point and, in addition,

5

implicitly requests the court reconsider portions of its previous order. *See* Opp'n 6–10, ECF No. 27 (arguing the inability to work for a particular supervisor is a disability under the FEHA); *id.* at 12–13 (arguing an employer must offer an employee a transfer to another position as a reasonable accommodation).

The court first reviews the standard of review applicable to a motion to dismiss, and second addresses each of the amended complaint's three FEHA claims.

II. MOTIONS TO DISMISS

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). The court assumes these factual allegations are true and draws reasonable inferences from them, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), even if they are "unrealistic or nonsensical," *id.* at 681. Aside from the complaint, district courts have discretion to examine documents incorporated by reference, *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012); affirmative defenses based on the complaint's allegations, *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013); and proper subjects of judicial notice, *W. Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 976 (9th Cir. 2012).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of a cause's elements do not alone suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555). The Ninth Circuit recently summarized *Iqbal's* description of a "two-step process": first the court identifies pleadings that are no more than conclusions and are therefore not entitled to an assumption of truth; second the court assumes each well-pleaded allegation is true and considers whether the allegations "'give rise to an entitlement to relief.'" *Eclectic Properties E., LLC v. Marcus & Millichap Co.*,

1   751 F.3d 990, 996 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678–79).  In all, evaluation under

2   Rule 12(b)(6) is a context-specific task drawing on "judicial experience and common sense."

3   *Iqbal*, 556 U.S. at 679.

4   III.    DISCRIMINATION ON THE BASIS OF DISABILITY

5          "It is an unlawful employment practice . . . [f]or an employer, because of the . . .

6   mental disability . . . of any person . . . to discharge the person from employment . . . , or to

7   discriminate against the person in compensation or in terms, conditions, or privileges of

8   employment."  Cal. Gov't Code § 12940(a).  California has adopted the three-stage federal test

9   for evaluating claims of employment discrimination, including disability discrimination.  *Guz v.*

10  *Bechtel National, Inc.*, 24 Cal. 4th 317, 354 (2000); *Wills v. Superior Court*, 195 Cal. App. 4th

11  143, 159 (2011).  The first stage is the plaintiff's *prima facie* case for discrimination.  Although

12  not an onerous burden, this stage requires satisfying specific elements.  *Wills*, 195 Cal. App. 4th

13  at 159.  District courts in this circuit regularly look to the elements of a *prima facie* case to inform

14  a decision on a motion to dismiss.  *See, e.g.*, *Jinadasa v. Brigham Young Univ.-Hawaii*, No. 14-

15  00441, 2015 WL 3407832, at *3–4 (D. Haw. May 27, 2015).  A plaintiff states a claim for

16  disability discrimination if she alleges she "(1) suffered from a disability, or was regarded as

17  suffering from a disability; (2) could perform the essential duties of the job with or without

18  reasonable accommodations, and (3) was subjected to an adverse employment action because of

19  the disability or perceived disability."  *Wills*, 195 Cal. App. 4th at 159–60*.* (citations omitted).

20         Ms. Alsup's amended complaint may plausibly be read to propose two theories of

21  disability discrimination.  First, its most obvious reading traces her condition's exacerbation to

22  September 2012, when she began working under Mr. Bower's supervision.  So understood, she

23  alleges a mental health condition that prevents her from working for Mr. Bower, but which

24  otherwise does not prevent her from fulfilling the demands of her position, even without any

25  accommodation.  Under this theory, the Bank is liable if her inability to work for Mr. Bower is a

26  disability, if she is a qualified employee despite her inability to work for her supervisor, and if the

27  Bank terminated her employment because she could not work for Mr. Bower.

28

Second, the amended complaint may also be read to allege Ms. Alsup suffers generally from bipolar disorder, depression, PTSD, and anxiety, regardless of Mr. Bower's influence. Under this second theory, she may rebuff the Bank's motion if her amended complaint adequately alleges she was fired in 2014 because of this disability in general. She advocates for this second interpretation in opposition to the Bank's motion. *See, e.g.,* Opp'n 7. ("Plaintiff therefore filed her [amended complaint] to clarify that her mental health limitations do not 'stem' from an inability to get along with a supervisor, nor do they 'only' preclude her from working for a particular supervisor."); *id.* at 10 ("Plaintiff was terminated because Defendant did not want an obviously unwell employee working for them, particularly as she was 'demanding' accommodations."). It was this second theory for which the court contemplated an amended complaint. *See* Order Jan. 15, 2015, at 16. Nevertheless, the court considers each theory in turn.

A.  Inability to Work for Jay Bower

As described above, a plaintiff claiming discrimination based on a mental disability must allege she was disabled, was a qualified employee, and suffered an adverse employment action because of her disability. *Wills*, 195 Cal. App. 4th at 159–60.

A mental disability is "any mental or psychological disorder or condition, such as an intellectual disability, organic brain syndrome, emotional or mental illness, or specific learning disabilit[y], that limits a major life activity." Cal. Gov't Code § 12926(j)(1). "A mental or psychological disorder or condition limits a major life activity if it makes the achievement of the major life activity difficult." *Id.* § 12926(j)(1)(B). Working is a "major life activity." *Id.* § 12926.1(c). Generally speaking, bipolar disorder and depression are mental disabilities for purposes of the FEHA. *See* Cal. Gov't Code § 12926.1(c). This court has, however, held both in this case and in *Gliha v. Butte–Glenn Community College District*, No. 12-02781, 2013 WL 3013660, at *5 (E.D. Cal. June 14, 2013), that an inability to get along with a particular supervisor is not a disability within the meaning of the FEHA. Order Jan. 15, 2015, at 6. The California Court of Appeal recently reached the same conclusion. *See Higgins-Williams v. Sutter Med. Found.*, 237 Cal. App. 4th 78, 85–86 (2015). Ms. Alsup therefore cannot show she suffers

from a disability under the FEHA based on her inability to work under Mr. Bower's supervision, and her claim must be dismissed inasmuch as it relies on this theory.

B.  General Disability Discrimination

Although Ms. Alsup cannot state a claim under the FEHA based on an alleged disability arising only from interaction with Mr. Bower, her case will survive the Bank's motion if the amended complaint includes sufficient factual allegations to support the conclusion she was terminated because she suffered from a mental disability. The same three elements of a disability discrimination claim apply: she must allege she suffers from a disability, is a qualified employee, and was subjected to an adverse employment action because of her disability. *Wills*, 195 Cal. App. 4th at 159–60.

Construed generally, Ms. Alsup's allegations readily clear the first two hurdles. As noted above, the FEHA lists bipolar disorder and depression as mental disabilities. *See* Cal. Gov't Code § 12926.1 ("Physical and mental disabilities include, but are not limited to, . . . clinical depression [and] bipolar disorder . . . ."). As noted, Ms. Alsup alleges her mental health conditions cause energy loss, impaired concentration, problems sleeping, suicidal ideation, hypomania, anxiety, uncontrollable thoughts, irritability, outbursts of anger, difficulty concentrating, and panic attacks, among other symptoms. FAC ¶¶ 6–9. She sufficiently alleges her mental health conditions limit major life activities. *See* Cal. Gov't Code § 12926(j)(1)(C). She also performed the essential functions of her job without any accommodation for several years after she joined the Bank in 2003. *Id.* ¶ 12.

The third element of her *prima facie* case presents a closer question. To state a claim, the amended complaint must allege an adverse action taken "because of . . . mental disability." Cal. Gov't Code § 12940(a). "The phrase 'because of' means there must be a causal link between the employer's consideration of a protected characteristic and the action taken by the employer." *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 215 (2013). The cause need not be a necessary cause; that is, an employer may be liable even if it would have taken the same action without consideration of the plaintiff's disability. *Id.* at 211 (an "employer does not escape liability" even if unlawful discrimination was only a "substantial factor motivating a termination

9

of employment," and even if "the employer proves it would have made the same decision absent such discrimination"). To prevail, a plaintiff must allege her disability was a "substantial motivating factor" in her employer's decision. *Id.* at 232.

Here, on a motion to dismiss, the court focuses on allegations, not proof, but the allegations must "nudge[] the[] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680. This line is thin. The Ninth Circuit recently explored its contours:

> When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible.

*Eclectic Props.*, 751 F.3d at 996–97 (quoting *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104 (9th Cir. 2013) (alterations omitted)). The Ninth Circuit also phrased the test in comparative terms: if both parties advance competing explanations of the alleged wrongs, and both explanations are plausible, the plaintiff's complaint may be dismissed only if the "'defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *implausible*.'" *Id.* at 996 (quoting *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) (emphasis in original)).

Here, Ms. Alsup must allege facts that plausibly show her mental health conditions were a substantial motivating factor in the Bank's decision to terminate her employment. The amended complaint alleges the Bank terminated Ms. Alsup's employment while she was on a leave of absence "without warning or interactive process" "[v]ia overnight mail," with these words:

> Due to the continuing nature of your leave, I wanted to contact you and clarify your employment relationship with U.S. Bank. Your employment has been terminated effective July 18, 2014. You have been absent from work since December 23, 2013. Your approved disability leave expired on March 23, 2014, and your request for leave beyond this date was denied by the Hartford. You have told me that you do not intend to pursue an appeal of the denial. Accordingly, you have been on an unapproved leave of absence since March 24, 2014. These absences have exhausted your leave

1
2
> entitlement under the Family Medical Leave Act and any applicable state law.
>
> In addition, to the extent that you even qualify for a reasonable accommodation, you have requested an accommodation that U.S. Bank believes is unreasonable. And, despite our repeated efforts to provide you a reasonable accommodation that would enable you to perform the essential functions of your Mortgage Underwriting Manager position, you have refused to engage in the interactive process and have advised me that you will not return to your position.

3
4
5
6
7   FAC ¶ 36; Wagstaff Decl. Ex. A, at 2, ECF No. 25-2.

8            These allegations are susceptible to two competing interpretations. In the Bank's
9   view, the letter speaks for itself: Ms. Alsup's employment was terminated because she was out of
10  work on an unapproved leave of absence, she demanded an unreasonable accommodation, and
11  she refused to return to work. *See* Mot. at 3. Interpreted this way, the Bank did not consider her
12  mental health conditions; rather, it fired her because she had vacated her position and refused to
13  help Ms. Wagstaff find a way for her to return to work. Ms. Alsup, on the other hand, contends
14  the same allegations show the opposite: she was terminated because she required medical
15  treatment, and the Bank unreasonably refused to discuss the accommodation because she was, in
16  its words, "demanding." *See* Opp'n 10–11. Interpreted this way, the Bank's actions were entirely
17  motivated by her disability: it considered her mental health conditions too troublesome, not worth
18  the effort.

19           These allegations are consistent with both explanations, but the alleged context
20  suffices to render Ms. Alsup's theory plausible. In addition to the termination letter, Ms. Alsup
21  alleges Mr. Bower subjected her to hostility, dismissed her mental health, and told her "she
22  should not talk if she ha[d] nothing intelligent to say." FAC ¶ 16. She alleges Ms. Wagstaff was
23  dismissive of her decline "and even commented . . . to state that 'we cannot help what you do in
24  the future.'" *Id.* ¶ 32. If proven, these facts would tend to show her disability was a substantial
25  motivating factor in her termination.

26
27
28

11

C. Summary

The amended complaint does not state a claim for discrimination based on Ms. Alsup's inability to work with Mr. Bower; however, its allegations state a plausible claim for discrimination based on her mental health conditions in general.

## IV. FAILURE TO ACCOMMODATE

The FEHA makes it unlawful for an employer "to fail to make reasonable accommodation for the known physical or mental disability of an . . . employee." Cal. Gov't Code § 12940(m). The elements of a claim for failure to accommodate are "(1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability." *Scotch v. Art Inst. of Cal.-Orange Cty., Inc.*, 173 Cal. App. 4th 986, 1009–10 (2009). The employer's obligation to provide disabled employees with a reasonable accommodation does not require it to provide "the best accommodation or the accommodation the employee seeks." *Hanson v. Lucky Stores*, 74 Cal. App. 4th 215, 228 (1999).

The inability to work for a particular supervisor is not a disability under the FEHA. *Higgins-Williams*, 237 Cal. App. 4th at 85–86. A transfer to a new position under a new supervisor is an unreasonable accommodation for an employee's inability to work for the old supervisor. Order Jan. 15, 2015, at 11–12. The claim for failure to accommodate is dismissed to the extent it is premised on Ms. Alsup's inability to work under Mr. Bower's supervision and her request for a transfer.

But, as the court has concluded above, the complaint states a plausible claim for discrimination on the basis of Ms. Alsup's mental health conditions in general. Furthermore, read in the light most favorable to Ms. Alsup, the amended complaint's allegations plausibly suggest the Bank terminated her leave of absence unreasonably. In general, a leave of absence may be a reasonable accommodation. *See Sanchez v. Swissport, Inc.*, 213 Cal. App. 4th 1331, 1338 (2013) ("Under the FEHA a disabled employee is entitled to a reasonable accommodation—which may include leave of no statutorily fixed duration—provided that such accommodation does not impose an undue hardship on the employer."); *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245,

263 (2000) ("Holding a job open for a disabled employee who needs time to recuperate or heal is in itself a form of reasonable accommodation and may be all that is required where it appears likely that the employee will be able to return to an existing position at some time in the foreseeable future."). Whether the Bank suffered undue hardship, whether it appeared likely Ms. Alsup would return to her position in the foreseeable future, and whether another defense could apply are inquiries inappropriate at this stage of the litigation. For this reason, the motion is denied.

V.   INTERACTIVE PROCESS

Under the FEHA, it is unlawful for an employer "to fail to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability or known medical condition." Cal. Gov't Code § 12940(n). "[T]he interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees with the goal of identify[ing] an accommodation that allows the employee to perform the job effectively." *Nadaf–Rahrov v. Neiman Marcus Gr., Inc.*, 166 Cal. App. 4th 952, 984 (2008) (citations omitted).

Here again, the motion is granted with respect to any claim premised on Ms. Alsup's inability to work under Mr. Bower's supervision. *See Higgins-Williams*, 237 Cal. App. 4th at 85–86. The motion is denied to the extent the amended complaint states a claim based on Ms. Alsup's mental health conditions in general. Read in the light most favorable to Ms. Alsup, the amended complaint alleges Ms. Wagstaff minimized Ms. Alsup's mental illness, FAC ¶ 32, and terminated her leave of absence unreasonably, *id.* ¶ 36.

VI.   LEAVE TO AMEND

Whether to grant a plaintiff's request for leave to amend is a matter of discretion, which discretion is "especially broad" after one or more previous amendments. *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989). Leave to amend may be denied if, for example, an amendment would be futile. *Id.* at 1160. Here, to the extent the court grants the

Bank's motion, it denies leave to amend. Ms. Alsup cannot proceed on a theory of disability based on her inability to work for a particular supervisor in a particular position.

VII.     CONCLUSION

This order resolves ECF No. 25. The motion is GRANTED IN PART and DENIED IN PART as follows:

(1) To the extent the amended complaint alleges disability discrimination, failure to accommodate, and failure to engage in a good-faith, interactive process on the basis of plaintiff's inability to work for a particular supervisor, it is dismissed with prejudice;

(2) In all other respects, the motion is denied; and

(3) Defendants shall answer the amended complaint within fourteen days.

IT IS SO ORDERED.

DATED: October 18, 2015.

UNITED STATES DISTRICT JUDGE